**In re Amos E. COX, Debtor.**

**No. 99–23397.**

United States Bankruptcy Court,
W.D. New York.

Aug. 7, 2000.

Kenneth Gallant, Rochester, NY, for debtor.

Brian B. Kumiega, Marvin R. Baum, P.C., Buffalo, NY, for secured creditor.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### BACKGROUND

On November 3, 1999, Amos E. Cox (the "Debtor") filed a petition initiating a Chapter 13 case. On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtor indicated that: (1) he was the owner of 133 Ellicott Street, Rochester, New York ("Ellicott Street"); (2) he believed Ellicott Street had a current market value of $70,000.00; (3) there was a first mortgage against Ellicott Street in favor of HSBC Mortgage Corporation (USA) ("HSBC") that had a current balance of $12,501.00 (the "HSBC Mortgage"); and (4) there was a second mortgage on Ellicott Street in favor of Marenna Hall that had a current balance of $40,000.00.

On February 24, 2000, the Court entered an Order confirming the Debtor's Chapter 13 plan (the "Plan"). The Plan provided for: (1) the payment through the Plan of $3,800.00 plus interest to HSBC as a secured creditor, because of arrears due on the HSBC Mortgage; (2) the payment of the balance of the Mortgage to HSBC outside the Plan in accordance with the original mortgage contract; and (3) the Debtor's unsecured creditors to receive a distribution of one hundred percent of their claims plus a value-added factor of nine percent to meet the "best interests of creditors test," because of the Debtor's non-exempt equity in various assets including Ellicott Street.

On June 27, 2000, HSBC filed a Motion for Termination of the Automatic Stay (the "Stay Motion") pursuant to Section 362, which alleged that: (1) the fair market value of Ellicott Street was $58,000.00, based upon the current tax assessment; (2) the balance due on the HSBC Mortgage was $16,156.60; (3) the estimated costs to sell Ellicott Street were $4,060.00; (4) there was equity in Ellicott Street over and above the HSBC Mortgage of $37,783.40; (5) the Debtor had failed to make three post-petition mortgage payments in the amount of $452.38 each, along with late charges, for total post-petition arrears due of $1,411.44; (6) HSBC was suffering immediate and irreparable harm and loss because the failure of the Debtor to pay post-petition mortgage payments, which was diminishing the equity which secured the HSBC Mortgage, would ultimately result in a failure of adequate protection for HSBC's security interest; and (7) the automatic stay should be terminated so that HSBC could pursue the collection rights and remedies under its Mortgage.

On June 29, 2000, the Debtor interposed an Answering Affirmation by his attorney, which admitted that the Debtor had failed to make three post-petition mortgage payments, but requested that he be given thirty days in which to bring all post-petition mortgage payments current.

At the hearing on the return date of the Stay Motion, in connection with the request of HSBC that it be awarded reasonable attorneys fees and disbursements in connection with the Motion, the Court inquired whether given: (1) the substantial equity cushion enjoyed by HSBC, in this case in excess of $37,000.00 on its own analysis; and (2) the relatively small amount of post-petition mortgage arrears, HSBC, in accordance with the Court's policy, had served the Debtor and his attorney with a written notice advising them that if the Debtor failed to cure all post-petition mortgage arrears within a reasonable period of time, a motion for relief from the stay would be filed which would result in substantial additional expenses being incurred by the Debtor.

The attorney for HSBC indicated that no such notice had been given to the Debtor because the attorneys for HSBC were unaware of the Court's oral policy regarding such a notice. The Court indicated that it would issue a Decision & Order in this case to insure that all similarly situated secured creditors would be aware of the policy.

On or about July 25, 2000, HSBC submitted a "Conditional Order" which provided that the Debtor would have until August 15, 2000 to cure all post-petition arrears and pay the $350.00 attorneys fees and disbursements incurred by HSBC in connection with the Stay Motion.

### DISCUSSION

Before each hearing on the confirmation of a Chapter 13 plan, the Court discusses various matters with the Chapter 13 debtors, including the necessity that they keep current on all post-petition mortgage payments when their Chapter 13 plan does not provide for the payment of the mortgage in full within the Plan, but provides that it will be paid outside the Plan in accordance with the original mortgage contract. With this clear warning, which reinforces the same message given to the debtors by

their attorneys and the Chapter 13 Trustee, that debtors must pay their mortgages on time, to the correct place, in the correct amount, and at all times have proof for the Court that they did this, this Court understands why mortgage holders, who have little or no equity in a mortgaged premises and are being paid pre-petition mortgage arrears through a Chapter 13 plan, are inclined to file a motion for relief from the automatic stay soon after a debtor fails to make post-petition mortgage payments. These mortgage holders have a genuine concern about adequate protection.

 However, when, as in this case, there is: (1) significant equity over and above the mortgage in question, even if there are junior mortgages which result in a debtor having no overall equity; and (2) the amount of the post-petition missed payments are relatively small when compared with the equity cushion, this Court does not believe that a mortgage holder should bring an immediate motion for relief from the automatic stay. The substantial equity cushion provides sufficient adequate protection, even though the debtor is not performing as required by the plan and the Court, to give the debtor one last notice of default. Therefore, this Court expects in such circumstances, in order to avoid additional substantial costs and expenses for a debtor, that when there is an equity cushion in excess of $10,000.00, a mortgage creditor or its attorneys, will give the debtor and the debtor's attorney a written notice which will advise them that unless all post-petition mortgage payments are brought current within ten days from receipt of the notice,[1] the mortgage holder will incur the additional expense of preparing and filing a motion to for relief from the automatic stay, which will result in costs and expenses being charged to the debtor.

If such an oversecured mortgage creditor fails to give the required ten-day writ-ten notice, this Court will not award reasonable attorney fees and expenses in connection with any stay motion.

## CONCLUSION

 In connection with this Decision & Order, the Court will sign the Conditional Order submitted by HSBC, because the Debtor has not objected to it and it would not be fair to apply its previous oral policy in these circumstances, because HSBC was unaware of the policy.

**IT IS SO ORDERED.**

---

**1.** Notices mailed by regular mail and not returned will be deemed to have been received two days after mailed.